## No. 11,748.

JAMES M. BOLLINGER AND WIFE VS. TEXAS & PACIFIC RAILWAY COMPANY.

Railway companies owe no duties to a person on a private switch, who crosses from one platform to another on a car that is coupled to a locomotive about to start, or actually moving. If he remains on the freight train, without the knowledge of the employés of the defendant, and is injured by an accident caused by a defective track, the railway company is not liable for damages.

The risk of passing through the cars, likely to get on the way at any moment, or in the act of moving, was apparent, and should not have been taken.

It not appearing that the switch, on the day of the accident, was impassably blocked by standing cars, the railway company is not liable.

If it was usual to pass from one platform to another through the standing cars (without any objection on the part of the defendant's employés), it does not follow that one has remedy for injuries suffered by the starting of the train after warning by the bell of the locomotive. The imprudence of the lad is the proximate cause of the fatal injury, and not the defective track, which is remote.

APPEAL from the Fourteenth Judicial District Court, Parish of Iberville. *Talbot, J.*

*Samuel Matthews* and *Gus A. Breaux* for Plaintiffs, Appellants.

*Howe & Prentiss* and *L. DePoorter* for Defendants and Appellees.

Argued and submitted March 28, 1895.

Decided April 8, 1895.

The opinion of the court was delivered by

BREAUX, J. The plaintiffs, appellants, claim ten thousand dollars damages from the defendant, sustained in consequence of the death of their son, caused by the violent closing of a sliding door of one of the freight cars of the defendant company.

The lad, aged about eleven years, was leaning against the door casing of the car; when it reached a sunken part of the switch the car lurched to the lower side of the track, collided with a platform erected near the spur track or switch, and in the sudden and violent shutting of the door the boy's head was caught between it and the post of the door. He died about twenty-four hours after the accident.

The spur track in question is not for public traffic. It was constructed for the Whitecastle Lumber and Shingle Company, at the town of Whitecastle, and is operated by the agents and other employés of the defendant company in hauling the mill's products of the lumber company to the main trunk of the defendant road.

The spur track measures about one thousand feet in length, and begins at the east line of the main trunk, and runs in a westerly

direction through the mill yard of the lumber company to a point across a street known as Cypress.

Platforms at places are erected about the level of the floors of the cars, on either side of the spur, and a space of about one foot was left on each side, between the platform and the car.

Frequently during the day the railway company hauls loaded cars from the spur to be coupled with the passing freight trains. Cars are also left on this track to be loaded by the laborers in the service of the Whitecastle Lumber and Shingle Company. There are quite a number of laborers and other employés of this company who dwell in houses near this track. It is stated that when there are a number of freight cars standing on the spur the employés quite often pass through the cars from one side of the track to the other, as it is quite convenient. The water supply of the company was on the south side of the track. The dwelling house of the plaintiff on the north.

On the 14th of August, 1893, the plaintiff sent his son, a bright lad, for water to the artesian well, on the south side of the track.

There were two ways—one, the convenient, through the cars, or the other around the cars. Boylike naturally he chose the former. As he entered the car a locomotive began to pull the cars toward the main track.

A witness, the only witness who was present when the accident occurred, stepped on the car from the platform. The boy was at the time in the car leaning against the door casing. He did not see the boy get in; nor did any one else. The car in which they were was partly loaded with laths. It was a stock car, not a close box car. Having just commenced to pull out, the movement of the cars was not rapid when this witness stepped on to the train. It was a moment after the witness stepped in that the car touched the platform, where there was a defect in the track, and pressed against the sliding door and closed it violently against the head of the boy. The oscillation converted the sliding door and its post into an improvised trap, which would seize and did seize the lad's head. The employés of the defendant, who were operating the locomotive and the cars, testify that the usual warning was given to give notice that they were coupling the cars and about to move. That at the time of leaving for the main track they did not see any one on the stock car in question.

The foregoing are the facts disclosed by the evidence.

The chief contention in behalf of plaintiff is that it was common for the employés and members of their families to cross the spur track through the cars when they are open.

Conceding that it was usual, it none the less devolved upon those crossing to exercise due care and prudence.

It was, at most, customary to cross. This did not involve a ride of some distance on the moving train.

It is not our impression that he could not have stepped across immediately after he had stepped into the car. He must have known that the engine was coupled to the car, and that unless he hastened to pass, he would be carried away with the moving train. He did not, after the car was hauled away, become a passenger, entitled to the protection due a passenger, or to one who is invited on the train, and therefore whatever negligence on the part of the defendant there may have been in not repairing the track was not legal cause for complaint on the part of any one who thus continued on the train. He did not come within the measure of the duty of the carrier to his passenger, or of the employer to his employé.

The risk of passing through the cars likely to get on the way at any moment, or in the act of moving, was apparent, and should not have been taken.

We have thus far assumed that he was not negligent in attempting to cross as he did, but it is not in proof that the spur track was filled with cars at the time and that it was not possible to pass at some other point without the greatest inconvenience.

There were four or five cars, as we understand from the evidence, standing on this track. There was, we judge, very little difference in the distance to the well to which it was his intention to go for water.

The injury might have been avoided by walking a few yards further. In view of the fact that cars were being moved it was imprudent to attempt to pass through the open doors of one of the number.

Where a boy climbed in play into an open freight car, standing and was injured by the falling upon him of the door of the car which was insecurely hung, the court considered that "the fact that the defendant knew that the car was left upon the track where it would be an enticing, attractive and inviting object to children, and that the children were and had been accustomed in and about such cars, upon the defendant's side track, was not an invitation or induce-

ment held out by the plaintiff to the defendant, and that the defendant owed no duty to the plaintiff, he being a trespasser." Law of Personal Injuries, Boswell, p. 104, par 78; see also Beach on Contributory Negligence, p. 274, par. 212, 2d Ed.

"But that there has grown up a habit on the part of individuals, or of the public generally, to travel over the track on foot, and that no measures have been taken to prevent it, does not change the relative rights and obligations of the public and the company. It is not the less a trespass in that it is repeated or that there are many trespassers." Beach, Contributory Negligence, Sec. 212.

In the light of doctrine and authorities we are of opinion that plaintiffs can not recover damages for the loss and severe affliction sustained.

Our brother of the District Court excluded the testimony offered to prove the habit alleged of passing through the car. We have none the less given due weight to the facts alleged upon that point.

It is therefore ordered, adjudged and decreed that the verdict of the jury and the judgment of the court based thereon are affirmed at appellant's costs.