## No. 13,858.

MRS. ELODIE MIRE VS. YAZOO AND MISSISSIPPI VALLEY RAILROAD COMPANY

### SYLLABUS.

Until the enactment of Statute 70 of 1886 to recover from a railroad corporation for stock killed or injured, one had to prove his demands. He had the *onus* of proof, and it devolved upon him to show that the injury was the result of defendant's negligence. By Statute 70 of 1886, the *onus* of proof is shifted from plaintiff to defendant, and defendant must sustain the material grounds raised in defense.

Judged by the statutory rule of evidence, it is not with sufficient certainty shown that defendant is not liable.

Part of the property was destroyed by defendant's cars, without its coming to the knowledge of its employees on the train. The running train collided with one of the animals of plaintiff at one place; a little further on it collided with another; and, possibly, still further on with a third of plaintiff's animals. The distance run (keeping into account the distance that the

headlight threw its light ahead of the train) was distance enough within which to stop the train before arriving at a place where a number of mules were killed, for the value of which the court holds that the defendant is liable. The employees not having seen the two, or possibly the three mules at all, it appears reasonably certain that no timely action was taken toward avoiding the killing of those that had huddled together at the place where a number were killed or injured, and for which defendant is held liable.

APPEAL from the Twenty-First Judicial District, Parish of Iberville—*Talbot, J.*

*L. D. Beale,* for Plaintiff, Appellee.

*Thomas J. Kernan,* for Defendant, Appellant.

The opinion of the court was delivered by

BREAUX, J. Plaintiff claims damages in the sum of twenty-one hundred and ninety-five dollars for killing eleven of her mules, one horse, and injuring another of her horses, in all thirteen head killed and injured.

Defendant's train on its way north on the morning of the thirteenth of November, 1899, at about three o'clock was near Bayou Manchac, the dividing line between the parishes of East Baton Rouge and Iberville. Plaintiff had about sixty head of live stock in all. They, in the night, made their escape from the lot in which it was customary to confine and secure them under lock. They passed from East Baton Rouge over the bridge on the bayou Manchac into the parish of Iberville on to a neighbor's plantation over which the railroad runs.

There is a railroad spur below the Manchac bridge at a distance of about nine hundred and seventy-five feet from that bridge. The first mule, after the collision, was found about fourteen hundred feet below the bridge. We judge that the second mule was struck at about eight hundred feet nearer the bridge, and the third about six hundred and twenty-five feet from the bridge. The locomotive engineer in charge of the train testified that directly after he had passed Manchac switch, about one hundred feet, he saw a number of mules ahead in the center and on both sides of the track; he immediately shut off the steam, applied the air brake, opened the sand lever, and the stock alarm was sounded. After he had seen the stock, the engine ran about ninety feet when it struck two mules, just before arriving at the bridge one or

two more were struck, and at the bridge they huddled together on each side when a number were struck and killed or injured.

The train consisted of eighteen loaded freight cars, tender and caboose. The testimony discloses that this train was stopped about fifty or sixty feet beyond the bridge in question. At the time of the collision, the train was moving at the usual rate of speed, that is about eighteen or twenty miles an hour. To the following question propounded to the fireman, "Had you been looking out before you got to the switch?" he replied, "I had just finished putting the coal on the fire; I could not see as well as if I had my head out instead of putting coal on the fire." We will not summarize the testimony at great length at this time, as we will have occasion later, in our opinion, to refer to the facts as shown by the evidence.

The judge of the District Court in an elaborately prepared opinion, arrived at the conclusion that the defendant was liable and pronounced judgment for the plaintiff, condemning the defendant to pay the sum of twenty-one hundred and ninety-five dollars, with legal interest from judicial demand. From this judgment defendant appeals.

We have found, as urged by the defendant, that the train was well equipped and the brake system in good order. No complaint on the ground of inefficiency of the train and appliances finds support in the evidence. The sole question is whether the engineer and fireman should have seen these animals before they did see them. This is the important issue. The engineer and the fireman testify that it was dark and foggy.

Plaintiff's witnesses not only swear that there was no fog, but say that the atmosphere was not even murky. Some of them say, however, that the night was dark. The number of plaintiff's witnesses who testified regarding the weather, was larger than those of defendant. This should not be a controlling consideration unless, as in this case, it is consistent with the other facts and circumstances. The judge of the District Court who heard the witnesses on this and other points, says that the preponderance is entirely with the plaintiff. We who do not know these witnesses are inclined, after a study of their evidence, as relates to its weight, to a similar view. The latter were on the ground a few minutes after the accident where they remained for some time, while defendant's train remained only a few minutes. They, plaintiff's witnesses, saw where the animals had been thrown and the imprint of their struggle where they fell. They could measure distances

and fix upon the place the stock was killed or disabled. The first animal was struck about fourteen hundred feet from the place where the last animal was struck. The testimony informs us that the distance within which it is possible to stop a train of the number of cars loaded as these were is about eight hundred and fifty feet.

Beyond question, the trainmen should have seen the first mule struck one hundred and fifty feet or two hundred feet before it was struck. They should have seen the second and third before they were struck. They passed and threw them off without knowing it. Although the night may have been unusually dark, and the place also, because of cane breaks near the track, yet it is obvious that the headlight of the train threw light in front a sufficient distance to render it possible to see a mule or horse on or near the track some feet before coming to it. Had the defendant's employees on the train seen the first mule killed within the scope of the headlight, in all likelihood the result would have been different. Had they seen the second mule struck or the third, the application of the brake at the moment would have broken its force and stopped it in time to avoid the accident at or near the bridge. The defense urges that the first animal struck was standing on the left of the track, that it was of a dark color and that the engineer could not see it from his position at the right of the engine. Granted. What about the second, and third, mules? Why were they not seen? We have not found that these questions are satisfactorily answered by the testimony. Attempts at explanation that are not clear and convincing will not suffice. The eyes of a railroad must be more penetrating than those by which ordinary enterprises are guided. The rapid and frequently dangerous modes of transportation require vigilance at all times. The *onus* of proof was with the defendant. It devolved upon it primarily to sustain the defense that the "killing or injury was not the result of fault or carelessness on its part or the negligent or indifferent running or management of their locomotive or train." Statute 70 of 1886.

Judged by this law, the defense has not made out its case, in so far as relates to the number of animals killed while huddled together at the bridge. It has not satisfied us that proper vigilance was exerted during the run which resulted in killing three of the number. As to these three, in view of the fact that it may be that it would not have been possible to stop in time, we do not think that the defendant is liable, but as to the others, we are convinced that they are, if account be taken of the cited statute.

Mire vs. Railroad Company.

The decision in Day vs. Railroad Co., 35 Ann. 694, was pronounced several years before the enactment of the statute just cited. Under laws which did not cast the burden of proof on the defendant and did not raise presumptions of negligence, the court in the cited case, reviewing the facts, said that the mules were found at a distance one from the other of eight hundred feet, that the failure of the engineer to stop his train after having struck the first mule is gross negligence and condemned the defendant to pay the value of all the animals killed.

We, desiring to be on the safe side, even under the cited statute, arrive at the opinion that the defendant is not liable for the three killed as before mentioned, but that it was negligent to kill others immediately after these three which should have served to vigilant eyes as a warning to stop and that the stop would have resulted in not committing further damages than in killing the three. In the cited case the court held that the act was grossly and culpably negligent. Here it was at least "indifferent running", words of the statute cited *supra.* If the employees of defendant were sufficiently energetic, it is not made evident by the testimony. Defendant's evidence, contradicted as it is by plaintiff's witnesses on material points, has not resulted in rebutting the presumption the statute creates when accidents happen to live stock. In leaving this subject we will add that the animals as well as the owner are entitled to a timely warning of danger.

It remains for us to determine the amount for which the defendant is liable. A witness who had the opportunity of judging as to the value of these animals said that he estimated their average value at one hundred and eighty dollars. Defendant, as relates to amount is, therefore, charged with the value of eight mules at one hundred and eighty dollars each, making one thousand four hundred and forty dollars; with the value of one horse at one hundred and sixty dollars; and with the injury to one horse at fifty dollars; making a total of one thousand six hundred and fifty dollars.

It is therefore ordered, adjudged, and decreed that the judgment appealed from is amended by reducing the amount from twenty-one hundred and ninety-five dollars to sixteen hundred and fifty dollars, and, after reducing the amount as just stated, the judgment is affirmed with legal interest allowed on the last mentioned amount from date as stated in the judgment amended.

The costs of appeal are taxed to appellee.