NICHOLLS, J.
We have ordered up this case for review on an application which recites : That the plaintiff obtained judgment against the defendant in the civil district court for the parish of Orleans for $200, the value of a mule killed upon the tracks of the defendant in the open country; his action being based on Act No. 70, p. 109, of 1886. That defendant appealed to the Court of Appeal, which court reversed the judgment of *313 the district court and dismissed his action, holding that his mule thus killed upon the railroad track was a trespasser, and that the railroad company owed “it” no duty, except not to'wantonly injure the mule. He urged that this ruling of the court was contrary to and inconsistent with the decision of this court in Mire v. Yasoo & Mississippi Valley R. R. Co., 105 La. 462, 29 South. 936.
The court is further referred to Thompson on Negligence, vol. 2, p. 671, § 2004, and cases cited. The Court of Appeal, in its reasons for judgment, used the following language:
“This suit is brought to recover the value of a mule, killed by one of defendant’s trains, about one mile north of Kenner Junction, about 10 o’clock at night, in an open country. Since the passageof Act No. 70, p. 109, of 1886, proof of the killing entitles the plaintiff to recover, unless defendant shows that the killing was not due to negligence on the part of its employes. The mule was a trespasser on the road 'bed, which is the private property of the company. The engineer and fireman did not see the animal, and, if they had seen it at the distance at which the locomotive headlight makes objects visible, they could not, at the rate of speed at which the train was running, have stopped it in time to avoid the accident. The questions are: Was the engineer under the circumstances, guilty of negligence? And what degree of diligence must he exercise?
“The rule of law concerning trespassers on the tracks of a railroad in an open country is different from that which applies to persons or animals having, as well as the railroad, a right of way at crossings or in thickly settled places.
“The rule, as stated by the text writers and adjudications, is that, in the event of any injury to a trespasser on its line, the railroad company can be held liable only for an act which is wanton or gross negligence in the management of its line, which is equivalent to intentional mischief, and it is not bound to keep a lookout for trespassers. It is sufficient if proper care be taken to warn and avoid striking the person or animal after the engine crew knew the dangerous situation. Thompson on Negligence, 449; Jaggard on Torts, 197; Scheffer v. Minneapolis & St. L. Ry. Co., 32 Minn. 518, 21 N. W. 711; Morrissey v. Eastern R. Co., 126 Mass. 380, 30 Am. Rep. 686; Snyders v. Natchez, R. R. & T. R. Co., 42 La. Ann. 302, 7 South. 582 ; Burbank v. Illinois Cent. R. Co., 42 La. Ann. 1156, 8 South. 580, 11 L. R. A. 720; Bollinger v. Texas & P. Ry. Co., 47 La. Ann. 721, 17 South. 253, 49 Am. St. Rep. 379.
In Houston v. Railroad Co., 39 La. Ann. 796, the Supreme Court said:
“ ‘Of course, it would evince criminal negligence to move a train at a high rate of speed through cities, towns, or villages, or other places where people are accustomed to throng; but, considering that the railroad companies are entitled to the exclusive use of their tracks or roadbed, there is no reason why in an open country, not thickly populated, the mere possibility that a person or persons may occasionally walk on the railroad track should be made a factor in the question of speed on railroads.’
“In other words, rapid transit, so essential to many phases of human or social interest would be an impossibility, if railroad employes could not take it for granted that people would neither trespass on the tracks nor allow their animals to do so.
“The McGuire Case, 46 La. Ann. 1543, 16 South. 457, is not analogous to this. The accident occurred in a populous town, and the railroad was bound to strict diligence, as it had no exclusive right of way. Mire v. Yazoo & M. V. R. Co., 105 La. 462, 29 South. 935, does not militate against the defense herein. The company was exonerated from liability for the killing of’ the first three of a large number of mules, although the court found that the employes ‘should have seen the second and third before they were struck; they passed all three of them without knowing it.’
“The defendant’s view is also sustained by the case of White v. Railroad Co. (recently decided by the Supreme Court) 114 La. 825, 38 South. 574.
“Considering that the engine crew were not bound to keep a lookout for trespassers on the tracks in an open country, and that they did not see the mule until after it had been struck, the accident was unavoidable, and the element of intentional mischief, which alone could make defendant liable, is not found in this case.
“Judgment reversed, and plaintiff’s demand is rejected, at his costs in both courts.”
We have carefully examined the evidence taken on the trial of this case, and we think it fairly appears therefrom that the killing of plaintiff’s mule was not the result of fault or negligence on the part of the defendant or the negligent or indifferent running or managing of their locomotive train. Under this condition of the ■ testimony defendant would be entitled to the judgment rendered in its favor by the Court of Appeal, assuming that plaintiff was free from blame (as he declares he was), and from negligence, or imprudence in respect to the circumstances under which his mule went upon the tracks of the *314 railroad company, and leaving out of view any expressions found in the opinion of the Court of Appeal from which an inference could be drawn that that question had entered a's a factor in the determination by the court of the issues submitted to it.
The only witness on the part of the plaintiff who claimed to have seen the accident was Raggio Perenlitta, who testified that it occurred about 9:30 o’clock at night; that he was standing at the time on the right side of the railroad; that when he first saw the mule it was about 20 or 25 steps from him; the train was then close, because he got out of the way. When he saw the mule on the track, he saw it by the light of the train. The train was then 7 or 8 steps from the mule, an<L witness was about 20 steps from the mule. Witness was about 20 or 25 steps from the train before it got to him. He got off the track before it reached him. The train was on a curve at the time; but it was a small curve, not curve enough to throw the light off of the track from the engine. The train was running at a speed of about 30 miles.
Defendant placed upon the stand the fireman and the engineer who were on the train. The former knew very little about the accident. He did not see the mule, as he was occupied at the time in putting in coal. The engineer testified that he was on the lookout, and looking ahead when the accident occurred. He did not see the mule when it was struck. The night was dark. The train was then going around a curve. Witness was at his place on the right of the cab, and the mule on the left of the track. The headlight was burning. As small a thing as a mule could be seen about 40 feet from the engine. Thfe train was running at a speed of about 10 miles an hour.
We place our affirmance of the judgment of the Court of Appeal, not upon the theory that the mule was a trespasser upon defendant’s track and was there through some fault, not that the railroad company owed it and its owners no duty, not because it was not bound to keep a lookout for trespassers, nor because the element of intentional mischief by the parties controlling the train was absent from the case, but because we find that the defendant had by evidence successfully freed itself from liability by establishing affirmatively, as required by Act No. 70, p. 109, of 1886, that the killing of the mule was not the result of fault or carelessness on its part, or the negligent or indifferent running or management of its locomotive or train.
If the affirmance of the judgment of the Court of Appeal were forced to rest upon the theory which we disclaim placing it upon, we would be obliged to reverse the judgment and affirm that of the district court.
We recognize the correctness of the claim made by the plaintiff that the owners of stock have the right under the law to expect that railroad companies will exercise ordinary care to prevent injury to their property, both in the construction of crossings and the operation of its trains. Kuhn v. C., R. I. & P. R. Co., 42 Iowa, 420; Mobile & Ohio R. R. Co. v. Williams, 53 Ala. 595; Coyle v. Balt. & Ohio R. R., 11 W. Va. 94. In McClanahan v. Vicksburg, Shreveport & Pacific Co., 111 La. 791, 35 South. 902, this court stated that in Becker v. L. & N. R. R. Co., 61 S. W. 997, 53 L. R. A. 267, the Court of Appeals of Kentucky quoted with approval the following from Shearman & Redfield, Neg. vol. 2, §§ 483, 484, to wit:
“Sec. 483. The rule stated in section 99, that the plaintiff may recover, notwithstanding his contributory negligence, if the defendant, after becoming chargeable with notice of the plaintiff’s danger, failed to use ordinary care to-avoid injuring him, has been enforced in many railroad cases. * * *
“Sec. 484. The rule stated in the last section, however, does not cover the whole ground. The defendant is responsible, not only for what he actually knows, but for that which he is bound to know. It is clear that the frequent statements that contributory negligence is a bar to recovery, except-where the defendant’s *315 conduct has been ‘reckless,’ ‘willful,’ or even ‘grossly negligent,’ are not sound. No courts have in actual practice adhered to this imaginary rule. If. has been explicitly overruled, and, indeed, it has been explained away or disavowed by courts which had previously stated it.”
Having copied this extract from the opinion of the Kentucky court, this court itself adopted it as correct.
As matters now stand, railroad companies, to free themselves from liability, must depend, under the circumstances of the case, upon their own freedom from fault, negligence, or indifference as having resulted in producing the killing of stock, and not expect to escape by reason of the fault or negligence of the plaintiff.
We are satisfied that the plaintiff’s mule must have gone immediately in front of defendant’s moving train, and so close to it that no vigilance or exertion of the engineer at that time could have prevented its being killed; that. before going upon the track it must have occupied in the darkness a position from which it could not be seen or discovered by vigilance on the part of the engineer, for the reason that it was beyond or outside of the field of view then afforded by the headlight. To pass from the darkness into the light must have required a very short space of time — too short to have saved the situation. We do not think the rate of speed at which the train was running at the time of the accident entered as a factor in the determination of the liability of the defendant under the circumstances of this case; for in our opinion to have been able to have prevented the killing of the plaintiff’s mule would have required the train to have been moving at a speed so slow as would have made it utterly impossible for the company to have performed its duty to the public as a public agency.
We do not give much probative force to the statement of Ferenlitta that the light of the headlight extended to and covered the place where the mule had been standing. It was evidently the mere opinion of the witness. Standing where he did in front of the moving train he was not in a position to know actually anything on that subject, certainly not as much as did the engineer, whose credibility as a witness reaches us unimpeached.
We do not think it was the object or purpose of the statute cited to make railroad companies insurers of the safety of the stock which may be killed in the operation of their trains, but to exact from them the exercise of the legal caution and vigilance which a due regard for the rights of others would require to be exercised under the circumstances of each case. Owners of stock cannot ignore the fact that the safety of their property must depend, should that degree of caution and vigilance have been exercised, upon their having taken steps themselves to insure its safety. 0
For the reasons herein assigned, it is ordered, adjudged, and decreed that the judgment of the Court of Appeal brought up herein for review be, and the same is, affirmed.
PROVOSTY, J., concurs in the decree.