(159 App. Div. 94.)

## WILLIS v. HARBY.

(Supreme Court, Appellate Division, Second Department. November 14, 1913.)

1. MUNICIPAL CORPORATIONS (§ 706*)—AUTOMOBILE ACCIDENT—NEGLIGENCE—SUFFICIENCY OF EVIDENCE.

Evidence, in a pedestrian's action for injuries from being struck by an automobile while he was walking in the street at a place where defendant was not bound to expect a pedestrian to be, *held* insufficient to show that defendant was guilty of negligence.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. § 1518; Dec. Dig. § 706.*]

2. MUNICIPAL CORPORATIONS (§ 705*)—AUTOMOBILE ACCIDENT—PERSONAL INJURIES—CONTRIBUTORY NEGLIGENCE.

Where a pedestrian was struck by an automobile while unnecessarily using the roadway for sidewalk purposes, without taking any precautions for his own safety or looking for approaching vehicles, though he could have seen the lights on the automobile long before it reached him, he was guilty of contributory negligence barring recovery.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 1515–1517; Dec. Dig. § 705.*]

Appeal from Special Term, Suffolk County.

Action by Charles E. Willis against Marx E. Harby. From a judgment for plaintiff, defendant appeals. Reversed and new trial granted.

Argued before JENKS, P. J., and BURR, CARR, STAPLETON, and PUTNAM, JJ.

Rowland Miles, of Northport, for appellant.
Willard N. Baylis, of Huntington, for respondent.

BURR, J. We think that the motion for a new trial should have been granted, upon the ground that the evidence failed to establish either defendant's negligence or plaintiff's freedom from contributory negligence.

[1] On November 3, 1910, about 7 o'clock in the evening, plaintiff, an elderly man, about 80 years of age, left the house of his daughter, Mrs. Sammis, which was situated on the westerly side of New York avenue, in the village of Huntington, to proceed to his own home on the south side of Fairview street, in the same village. New York avenue runs approximately north and south. It is intersected by Carver place on the south, at a point 125 or 150 feet distant from the driveway into the premises of Mrs. Sammis. On the north it is intersected by Fairview street from the east and High street from the west, the former being almost a continuation of the latter and being about the same distance from Mrs. Sammis' residence as Carver place. New York avenue is one of the principal thoroughfares of the village,

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

and at the hour named was frequently crowded with vehicles coming from the station to the residence part of the village. On either side of New York avenue were cinder sidewalks, and the surface of the street was described as "a macadam road with an asphaltic surface," which had been oiled not very long before the date named. On the easterly side of New York avenue there was a trolley track. There was evidence from one witness called for plaintiff that it was constructed with "T" rails, the depth of which was 3½ inches. But we think that the evidence, particularly the exhibits introduced by plaintiff, shows clearly that they did not protrude above the surface of the ground to any such extent, or that the space between the rails was not part of the traveled roadway. It is true that this same witness said that between the rails "there is no beaten roadbed," but he also testified that "it was level between the rails," and the exhibits in the case, introduced by plaintiff, tend to confirm this testimony. There was also some testimony to the effect that when the surface of the roadway was wet, an automobile passing over it was likely to skid by reason of the character of the surface thereof. On the night in question it was raining, and the wind was from the south. When plaintiff left his daughter's residence he came down the driveway, which had a bridge over the westerly gutter, and crossed New York avenue to the easterly side, instead of going either to the south to Carver place or to the north to Fairview street, and there crossing the streets, where there were bridges over both gutters. When plaintiff reached the gutter on the easterly side of the street it was full of water, and there was no bridge across it. He then turned and walked south between the rails of the track, toward Fairview street, with his umbrella over his head, facing the direction from which the storm came. Just before he reached Fairview street, according to his testimony, he stepped clear of the easterly rail. As to this he is contradicted even by his own witnesses. But assuming that he did, he then says that he looked toward the west and saw defendant's automobile coming toward him in a diagonal direction, and it crossed over one or more of the rails of the trolley track, struck him and knocked him down, and he sustained some injuries therefrom.

We fail to see how defendant's negligence was established. There was a conflict of testimony between plaintiff's witnesses as to the rate of speed at which defendant's car was proceeding. One witness thought it was going 18 or 20 miles an hour, and that, owing to the slippery condition of the roadway, it swerved from the center of the road over onto the car track. But this witness admitted that at the time when he saw the car proceeding at that rate of speed it had not reached the curve in New York avenue, which is to the south of Fairview street, and he does not undertake to state what the speed of the car was at the point of the accident. Another witness, called for plaintiff, a chauffeur, who was then in defendant's employ, but had since been discharged by him, testified that the car was going at the rate of 14 or 16 miles an hour, and that it did not swerve, but that in turning the curve to the south of Fairview street defendant kept too far to the right, and so got on the car track. But in either case he was

within that portion of the roadway which might be, if it was not frequently, traveled by vehicles, and where he was not bound to expect that pedestrians would be. We fail to see wherein, under the circumstances here disclosed, even if he was operating his car at the higher rate of speed, this established negligence, since the accident did not occur at a street crossing, nor at any point where defendant could reasonably anticipate that he must take precautions against pedestrians making use of the roadway for sidewalk purposes, when there was a good sidewalk on each side of the avenue. There seems to be no dispute that when defendant did discover plaintiff a short distance in front of the car, he did all that he could to avert the accident, and the car was brought to a standstill not more than 100 feet from the place thereof. The car was lighted with five lights; two at the front, two at the sides and one at the rear. There is testimony that no horn was blown nor any signal given, but it is difficult to see what obligation rested upon the defendant to sound his horn between street crossings unless there was something in the way. There is no evidence that after plaintiff was discovered in the roadway there was any opportunity to do this.

[2] As to the contributory negligence of plaintiff. When he left his daughter's house, instead of proceeding south to Carver place and then crossing the street, which would only have involved walking 125 feet or thereabouts, crossing the street at a regular crossing and then retracing his steps, or going north to Fairview street, which did not involve walking any additional distance, and there crossing the street, he crossed directly in front of his daughter's residence, and when his progress on the east side was barred by the water in the gutter, instead of retracing his steps to reach a safe crossing, he proceeded to walk up the roadway, at an hour of the night when he knew the vehicular traffic was considerable, with an umbrella over his head, and apparently without taking any precautions for his own safety. The learned trial justice expressed the opinion that in a crowded city street such conduct would constitute contributory negligence as matter of law. Under existing circumstances, a verdict that plaintiff was free from contributory negligence is against the weight of the evidence. If plaintiff had looked he could have seen the lights on defendant's car long before it reached him—much further than a person in the car could see an object in the roadway. Either he could have avoided it, or if the car turned so close upon him that this was impossible, then whether the cause of this turning was because the car skidded, or whether inadvertently defendant kept too far to the right, he was in that part of the roadway where he had a right to be, and where plaintiff took the necessary risk of being, and in neither case is defendant liable for the consequences.

The judgment and order denying a motion for a new trial should be reversed and a new trial granted, costs to abide the event. All concur.