### No. 1622
### First Circuit

---

## YOUNG & DEBRITTON v. LOUISIANA RAILWAY & NAVIGATION CO.

---

(December 10, 1925, Opinion and Decree)

---

(*Syllabus by the Editor*)

1. **Louisiana Digest—Railroads—Par. 86, 88, 89.**

Where mules are killed by their becoming frightened and running on a trestle and over an embankment, if the railroad prove that the engineer of the train was not at fault, the owner of the mules cannot recover.

(See Act 70 of 1886 in regard to burden of proof where livestock is killed by a railroad. See also Civil Code, Article 2315. Editor's note.)

Appeal from the Twenty-fourth Judicial District Court, Parish of West Feliciana, Hon. Charles Kilbourne, Judge.

This is a suit arising out of mules becoming frightened and running on a trestle and over an embankment. There was judgment for defendant and plaintiff appealed.

Judgment affirmed.

Charles A. Holcombe and Justin C. Daspit, of Baton Rouge, attorneys for plaintiff, appellant.

James J. Kilbourne, of St. Francisville, attorney for defendant, appellee.

ELLIOTT, J. Five mules belonging to plaintiff got on a railway trestle of defendant's line of railway. Two of them fell or jumped to the ground about 25 feet below and were killed. One was pulled off and saved, while two got over the trestle. The one pulled from the trestle and the two that got over, were each more or less crippled.

The plaintiffs, alleging that they were all driven on the trestle as a result of the negligence and fault of defendant in the operation of a train, claim $600.00 damages for the two that were killed, and $200.00 on account of the injuries received by the others.

Defendant denies that the animals were driven on the trestle, and that defendant was negligent or at fault in the matter; and denies liability on account of the death and injuries alleged.

There was judgment below rejecting plaintiffs' demand, and they have appealed.

It seems that plaintiff had 25 or 30 head of mules in a lot near defendants' railroad. They got out of the lot in some way, and about 1:30 a. m., on the night of August 5, 1924, defendant's engineer and fireman on southbound freight train No. 39, composed of 53 cars, discovered them on the railroad about a mile north of Tunica, about 300 yards ahead of the train; some on the track, others near by on the right-of-way. The engineer blew the stock alarm, expecting to frighten them off the track, which was open all the way to Tunica, but most of them, instead, ran down the track ahead of the train. The engineer could not see them but a short distance after they were first seen on account of a

curve in the track; but suspecting that they were still on the track ahead of him, he continued to sound his stock alarm in such a way that he aroused the neighborhood. As soon as he turned the curve he saw that they were still on the track, upon which he again sounded his stock alarm, and slowed down his train to 5 or 6 miles an hour; flashed his headlight off and on almost continuously, and when he reached Tunica Station, stopped his train 2 or 3 minutes.

His train was here cut in two in order to ascend the Tunica hill; the grade of which commences around a curve about a quarter of a mile south of Tunica, and after passin, the trestle in question.

The trestle is approached by an embankment 40 or 50 feet long; sloping on each side, commencing on a level with the ground and getting higher and higher until, at the trestle, it is about 20 feet high.

The testimony shows that the railroad curves immediately after leaving Tunica, and between Tunica and the trestles; and that you can not see the track around the curve, but it becomes straight about 300 feet from the trestle. The engineer testifies that when he stopped at Tunica the mules went ahead down the track, out of his sight around the curve; that when he had cut his train in two and started up, suspecting that they might still be on the track, he again sounded the stock alarm and ran very slow. When he got around the curve he saw them again, bunched up around the trestle, ahead of him on the track, upon which he immediately applied the air, and stopped his train as quick as possible.

The plaintiffs urge the testimony of Mr. Comeaux, that the train was not stopped until within about 40 feet of the trestle, and that of Mr. Spellman, who lives near the trestle; and, waked up by the stock alarm, saw the mules pass his home with train following them, and told his wife that he was going to see them run into the trestle.

The testimony of Mr. Comeaux, that the train was not stopped until within about 40 feet of the trestle, is overcome by that of the engineer, conductor, fireman and Mr. Spellman; who testify that it was stopped within about 300 feet of the trestle.

The testimony of Mr. Spellman, so far as pertinent, is as follows:

Note testimony p. 81:

"About 1 or 1:30 I heard the engine blowing. I woke up and in just a few minutes after that I seen a lot of mules, and then I jumped up and ran out on the porch and I stayed there, and they went on down the trestle. The engine came right along behind them."
"Q. When you first saw the mules were they running?
"A. No, sir, but they were walking pretty peart."

Note testimony, pp. 83, 84, 85:

"I got up and went out on the porch before the stock passed my house and I set down in a chair and said I was going to see him run them into the trestle I says to the madam, I am going to see him run them into the trestle; and I set there."
"Q. Well, what did you see—You saw these mules approaching the trestle?
"A. Went on down to the trestle and stopped."

He does not say that the engineer ran the mules into the trestle; his statement that the mules were walking pretty peart when they passed his house, and that they went on down to the trestle and stopped; that the train came to a full stop about opposite his house; that his house is about 300 feet from the trestle, supports the testimony of the engineer; that when he started up his train at Tunica, he sounded his stock alarm, pulled slowly

around the curve toward the trestle, about a quarter of a mile distant. That sounding his stock alarm around the curve, as soon as he again saw the mules on the track about 500 yards ahead of him, he applied the air and brought his train to a standstill as soon as possible, and within about 300 feet of the trestle, and that the mules did not go on the trestle until after his train had been stopped.

See testimony engineer. Note testimony pp. 71 and 74.

Indeed the reading of the evidence suggests the question: what is it that the engineer could have reasonably been expected to do that he did not do, after seeing the mules ahead of him near the trestle? The track was open on each side and the mules were not trapped. Nothing prevented them leaving the track, after leaving Tunica.

The railroad company is not liable because animals are afraid of trains. The engineer did not sound a stock alarm after seeing the mules bunched ahead of him near the trestle. Suppose these animals, having walked to the trestle and stopped, as Mr. Spellman says they did, were startled when they saw the train coming toward them around the curve; and instead of being moved by their animal impulse to go down the embankment, as all of them did except five; were moved instead to go on the trestle. The railway company is not at fault when it did not, after seeing their situation, frighten them into doing so.

The case Day vs. Railroad Company, 35 La. Ann. 694; and Mire vs. Railroad Company, 105 La. 462, 29 South. 935, and the other authorities cited by the plaintiff, do not control the facts in the present case.

The railroad company, having satisfactorily established that the killing or injury was not the result of fault or carelessness on its part, or the negligence of

indifferent running or management of its locomotive or train.

The judgment appealed from is correct.