LAGUENS v. MASERA, Appellant

---

(February 15, 1926, Opinion and Decree)

---

(*Syllabus by the Court.*)

1. **Louisiana Digest—Automobiles—Par. 7, 7 (b).**

A pedestrian in the public highway at night, on the outskirts of a city where automobiles and other vehicles travel almost exclusively, is in a position of danger calling for the exercise of extreme precaution. Under such circumstances he should look with diligence for vehicles approaching before or behind him.

2. **Louisiana Digest—Automobiles—Par. 8.**

When a preponderance of evidence indicates that he was struck by an automobile while lying in the roadway, where the vehicle, properly lighted, was properly traveling, and that the driver exerted every possible effort to avoid the accident, recovery will be denied.

Appeal from the Civil District Court, Parish of Orleans, Division "B". Hon. M. M. Boatner, Judge.

Action by John Leon Laguens against Joseph Masera for damages for physical injuries.

There was judgment for plaintiff and defendant appealed.

Judgment reversed.

WESTERFIELD, J.      Dissents.

Harry Mooney and John C. Foster, of New Orleans, attorneys for plaintiff, appellee.

Emile Pomes, of New Orleans, attorney for defendant, appellant.

OPINION

BELL, J.      This is a damage suit for physical injuries which plaintiff claims to have sustained when struck and run over by defendant's automobile on the West End road, within the city limits of New Orleans. There was judgment for plaintiff for $3500.00. Defendant has appealed.

The event which led to the unfortunate occurrence finds its origin in one of the so-called soft drink saloons of New Orleans, situated at the corner of Toledano and Magazine streets. It was there that plaintiff and several other young men were gathered on the night of the accident. Plaintiff testifies that he was there with friends from about eight to eleven o'clock in the evening, and that at the latter hour, other friends, including the proprietor of the saloon, joined them in the neighborhood, making a party of eight; that a pleasure ride was suggested, and that plaintiff, with seven other friends, took a five-passenger automobile and proceeded toward Bucktown, a suburban resort. A punctured tire, which for some reason they

were unable to repair, caused them to wend their way on an untired rim from Canal Boulevard via Spanish Fort road to Bucktown, and thence toward the city again by way of the West End road. Plaintiff, meanwhile, was seated with two other passengers on the front seat of the automobile, while the other five passengers managed in some way to crowd into the back of the car. After traveling about a mile and a half on the West End road, which is a driveway alongside of the New Basin Canal, at the hour of 2:15 a.m., plaintiff, who was holding with his right hand the punctured tire, while it rested on the right running board of the car, suddenly lost his grip on the tire, causing it to fall out in the roadway. He testifies that the car was stopped, and that he alighted therefrom and walked a short distance directly behind the car on the upper side of the road in search of the tire, and that he remembered nothing thereafter until he regained consciousness a week or ten days later at the hospital. He alleges in his petition that he was in the act of stooping to pick up the tire when he was suddenly struck from the rear by defendant's automobile, going in the opposite direction toward West End. There is no proof in the record that he was in such a position when struck, nor has he testified in any manner as to just where he located the lost tire, whether directly behind the car in which he was riding, that is, on the upper side of the road, or whether on the lower or New Basin side, reserved for west-going traffic. His failure to establish this important fact raises the presumption that he wandered in search of the tire into that part of the road where he should have exercised unusual precaution against danger from any oncoming vehicles on the right of the road. Several witnesses for plaintiff testify that

the tire was found close to plaintiff's body, and under defendant's car where plaintiff was also lying after the accident. All defendant's witnesses, himself included, testify that they never saw any tire, but that plaintiff's hat was found by them some twenty-five feet away from plaintiff's body, and that his eyeglasses were found some eight feet beyond and directly in front of defendant's car.

We note in the record a typewritten statement made and signed at the Tenth Precinct Police Station on the night of the accident. This statement closes with the following words: "From all accounts, the accident was unavoidable." This, among other things, was made by one of plaintiff's friends and witnesses who was present at the scene of the accident. Two other friends and witnesses for plaintiff, also shown by the record to have been with plaintiff when hurt, likewise signed this police record with the following superscription: "We, the undersigned, do hereby corroborate this statement as true and correct."

After a most careful scrutiny of the entire record before us, we are inclined to add our endorsement to the above declaration insofar as it may be applied to the acts of the defendant, who appears from the evidence to have been entirely free from negligence, and to have exerted every possible effort to avoid the accident.

Defendant testifies that on the night in question he closed his restaurant in the city of New Orleans at about 1:45 a.m., and in company with his cashier and another man drove his automobile out the West End road for the purpose of collecting a debt due him by one of the roadhouse keepers at West End; that he was driving his car in about the middle of the road, and at a speed of from fifteen to twenty miles an hour; that when seeing plaintiff's

car parked with headlights burning, which had stopped on the upper side of the road to defendant's left, he slackened his speed slightly while passing plaintiff's car, and immediately resumed his former speed for about one hundred feet, when he noticed that there was an obstruction on his side of the road some twenty-five feet ahead of him, which he took to be a bundle of rags; that when within fifteen feet of the object he discovered it to be a man lying on the road, and tried to swerve around him, but to no avail, and that he immediately applied both his foot and emergency brakes, but that plaintiff was too close to avoid hitting him; that he did not knock plaintiff down with his bumper, which protected both front wheels, and that plaintiff, while lying on the road upon his back, was struck by the crank case of defendant's car, a blow which caused the serious and multiple fracture of the pelvis, as proven by the record. He further testifies that several of the plaintiff's party were apparently drunk, and that when he, defendant, assisted plaintiff and took him to the hospital, the plaintiff was shouting and complaining that someone had kicked him, and that the Sister of Charity told plaintiff in defendant's presence that he, plaintiff, was drunk. Defendant further states that he heard loud talking as he approached plaintiff's car, but that he did not hear anyone call out to him, nor was he otherwise notified of anyone being in the road ahead of him.

The driver of the plaintiff's car testifies that defendant was not looking ahead of him, but talking to his companion sitting beside him, and that defendant was looking away from the road. This witness also swears that when defendant "got by" plaintiff's car, witness shouted to him: "Watch out, a man is on the road looking for his tire", and that as soon as these words got out of the witness' mouth plaintiff was run over. Another witness for plaintiff, attempting to corroborate the driver of plaintiff's car, says that when the driver shouted defendant had his head turned away from the road. We do not give any weight to this evidence, for it is plain (if we believe plaintiff's driver) that the shouting did not occur until after defendant's car had gone by; it was then impossible for any of plaintiff's witnesses who were in his car to have seen in the darkness beyond, whether or not defendant was observing a proper lookout upon the road ahead of him.

The evidence is conflicting as to how far plaintiff was, at the moment of the accident, from his own car. Three of his witnesses set the distance at thirty-five feet, while plaintiff says he had walked about from five to ten feet past the machine, and that he then recollected nothing more. Defendant and one of his witnesses both say that plaintiff was on the road about one hundred feet from plaintiff's car. The shorter the distance, the less opportunity the defendant had to heed—if he heard—the warning which plaintiff's driver claims to have given. The night appears to have been an ordinary one, as shown by bureau certificates filed in the record, though defendant says the atmosphere was misty, causing his windshield to be somewhat clouded. Plaintiff admits that he did not look for traffic approaching him in either direction. This he should have done. He must have been well acquainted, as a frequenter of this section of the city, with the almost exclusive vehicular traffic on the West End road, particularly at the hour above mentioned.

Counsel for plaintiff stresses the point that defendant's car was traveling the

middle of the road when plaintiff was injured. If this were a fact, we know of no law that makes it negligence per se to have so traveled on a public highway such as West End road, but the evidence shows that defendant's car was more to the right of the road than in the middle thereof, and that plaintiff's body, after the accident, was found immediately behind the right front wheel of defendant's car. One of plaintiff's witnesses testifies that defendant's car was on the right side of the road, thus corroborating defendant and another witness in their statements that defendant was keeping well to the right in traveling toward West End.

It is well established by witnesses for both sides that plaintiff was found lying on the flat of his back after the accident, and defendant testifies that when he first saw plaintiff he was lying in that position, with his feet toward defendant and his head toward West End. Dr. Parham, the distinguished surgeon, who treated defendant, was of the opinion that from the locality of the five fractures all found to be in front of the pelvis, that the injuries sustained were most probably due from some blow upon the front rather than the rear of the body.

We are unable to conclude that plaintiff was standing or stooping with his back toward defendant's car when struck; the evidence is most persuasive to the contrary, and indicates that he was lying in the road at the time of the accident. We are further convinced that plaintiff was in the line of traffic properly reserved to west-going vehicles, and that he was on the right or New Basin side of the road. From this point he should have seen the light reflected from defendant's car in ample time to warn defendant or to himself avoid

the accident. It is impossible to believe that plaintiff's hat and eyeglasses could have been thrown in such opposite directions from each other, and to such distances at which they were found, as result of plaintiff's contact with the oncoming car. There can be no other conclusion but that plaintiff wandered in various directions over the more or less darkened roadway, and that he for some reason fell on the road before he was hit. It is argued, and we are aware of some authorities in support of the contention, that an automobile or other motor-driven vehicle, if properly equipped with brakes and lights, and if carefully driven, should be stopped within the range of vision at which objects can be seen on the road ahead. We do not now, nor have we in previous decisions, approved of this doctrine. Defendant, in the instant case, was driving at a lawful and reasonable rate of speed; he appears to have made every possible effort to avoid the accident. It is not shown that his lights or brakes were defective, or that he failed to see the plaintiff when he should have seen him, that is, within sufficient time to avoid hitting him. Plaintiff was not dragged after being hit, and the fact that the car was stopped before it had passed over from plaintiff's body indicates that the car was well under brakes before reaching or striking plaintiff.

In the recent case of Woringen vs. Zetzman, 2 La. App. 106, this court denied recovery under circumstances which are in many respects similar to those in the instant case. The Supreme Court, by refusing a writ in the Zetzman case, intimated its approval of our appreciation of the law, when we held that:

"A pedestrian traveling at night on a narrow road in the outskirts of the city with thick bushes on either side, upon which numerous automobiles go and come,

and few pedestrians, occupies a position of danger that calls for great care to avoid injury. If, under these conditions, he is injured by a passing automobile, he cannot recover unless he shows that the driver was negligent or could have avoided the accident."

In Vicknair vs. L. R. & N. Co., 11 Ct. of App. 76, it was held:

"It is not negligence per se in a railroad company to run a train equipped with proper appliances on a dark foggy night in the open country at such a rate of speed that it is impossible to stop the train within the distance within which stock on the track may be discovered by the aid of the headlight."

See also Smith vs. Crescent City Railroad Co., 47 La. Ann. 833, 17 South. 302; Mongagno vs. I. C. R. R. Co., 115 La. 597, 39 South. 699; Moren vs N. O. Ry. & Light Co., 125 La. 944, 52 South. 106; Dean vs. Burglass, 144 La. 824, 81 South. 330; Willis vs. Harley, 144 N. Y. Supp. 154.

We are satisfied from the evidence that defendant in this case was free from negligence and that such cannot be said 'of the plaintiff. There should have been judgment for defendant.

It is therefore ordered that the judgment appealed from be reversed and set aside, and that there now be. judgment in favor of the defendant, Joseph Masera, dismissing plaintiff's suit at his cost in both courts.
Judgment reversed.

---

## DISSENTING OPINION

Whether plaintiff was drunk or sober at the time of the accident I think the defendant could and should have avoided the accident. I therefore respectfully dissent.
W. W. Westerfield, Judge.