No. 2410

Second Circuit

---

WHITEHEAD v. MISSOURI PACIFIC RAILROAD COMPANY

---

(March 11, 1926, Opinion and Decree)
(April 10, 1926, Rehearing Refused)

---

(*Syllabus by the Editor.*)

1. **Louisiana Digest—Railroads—Par. 86, 88.**

The law requires trainmen to maintain a lookout, and, therefore, the presumption of negligence under Act 70 of 1886 in cases where animals are killed by the railroad is not overcome by proof that the engineer alone was maintaining a lookout at a point where, because of a curve, the situation could be seen by the fireman but not by the engineer.

Appeal from the Thirteenth Judicial District Court of Louisiana, Parish of Caldwell. Hon. F. E. Jones, Judge.

Action by Charles N. Whitehead against the Missouri Pacific Railroad Company.

This is an action to recover the value of an animal killed by one of the trains operated by the defendant.

The judgment of the district court was in favor of the plaintiff and defendant appeals.

Judgment affirmed.

Gus L. Alford, of Columbia, attorney for plaintiff, appellee.

Hudson, Potts, Bernstein & Scholars, of Monroe, attorneys for defendant, appellant.

WEBB, J. This is an action to recover the value of an animal killed by one of the trains operated by the defendant.

The judgment of the district court was in favor of the plaintiff and defendant appeals.

Judgment affirmed.

OPINION

The defendant urges that the judgment should be reversed, basing the contention upon the testimony of A. W. Johnson, called on behalf of plaintiff, and the engineer, who were the only witnesses who claim to have noted the situation just prior to and at the moment the animal was hit.

The scene of the accident was at Clark's station, where the track north from the depot is straight until a cattle guard is reached, which catle guard is at the south end of a curve to the west.

The evidence of Johnson is in part as follows:

"Q. Mr. Johnson, what first attracted your attention to this accident?
"A. Well, I had just eaten my supper and had walked out on the front porch and I saw the cow grazing on the east side of the track. I saw the train coming and my first thought was to go and chase the cow off. * * *

"Q. How long had she been grazing there?

"A. I don't know.

"Q. Was she grazing there when the train came in sight?

"A. Yes, sir.

"Q. What distance was the cow from the rail?

"A. I judge five or six feet from the rail—right on the dump.

"Q. I will ask you to state, Mr. Johnson, how far the train was, if you know, from the cow at the time—how far they could have seen the cow before hitting her?

"A. I really am not in position to answer that question intelligently. * * * I know there is a curve just north of where this cow was struck up there.

"Q. How far north?

"A. * * * I would say three hundred and fifty yards. * * *

"Q. Then, when the engineer came around the curve he should have been able to see the cow standing on the track?

"A. * * * I don't know whether he could see around the curve or not; the cow was on the fireman's side of the track; on the east side of the track.

*    *    *    *

"Q. When the train came in sight—you say it was three hundred yards from the cow to where the train came in sight around the curve?

"A. Something like that.

"Q. If the engineer could not see up to where the cow was could the fireman see?

"A. Yes, sir.

*    *    *    *

"Q. How far was the cow from the depot when she was struck?

"A. Oh, I would judge the distance from the depot was something like three hundred yards—just an estimate, of course.

*    *    *    *

"Q. How far was the engine from the cow when the cow came up on the track?

"A. I imagine a hundred or a hundred and twenty-five feet or something like that.

*    *    *    *

S. R. Addis, the engineer, said in part:

"Q. Mr. Addis, were you the engineer on the train at the time this cow, in question was killed?

"A. Yes, sir.

"Q. * * * When did you first see this cow?

"A. Coming into Clarks when I rounded the curve.

*    *    *    *

"Q. Had you gotten out of the curve when you saw the cow?

"A. I couldn't see it until I did.

"Q. How far had you got out?

"A. I wasn't over two hundred and fifty feet from the cow when I got to where I could see it.

"Q. Is this track along this point on a dump?

"A. There is very little grade.

"Q. I am talking about the track built up—was it on a dump?

"A. That is grade, there was very little grade.

*    *    *    *

"Q. Did the cow go to your right or left?

"A. She went on the left. I didn't see anything of it on the right.

"Q. When you first saw the cow what did you do? * * *

"A. I had already shut off for the station and I applied the brakes and sounded the whistle.

*    *    *    *

"Q. How fast were you going when you first saw the cow?

"A. Between twenty-five and thirty miles an hour.

*    *    *    *

"Q. You had your steam cut off and when you saw the cow you applied your brakes—in what distance could you stop that train?

"A. In about six or seven hundred feet.

"Q. You could not stop in less distance than that?

"A. By using the emergency brakes—between six hundred and fifty and seven hundred feet.

*    *    *    *

"Q. How far were you from the depot when you struck the cow?

"A. It was about seven hundred feet from where I struck the cow to the depot.

"Q. Do you know how many rail lengths it is?

"A. No, but I knew it was about three

telegraph poles from the depot to where the cow was struck—a little more than that, and I understand they are three hundred and fifty feet apart.

\* \* \* \*

"Q. How far back up the road north from the cattle guard could an object be seen along there by either the fireman or engineer?

"A. There is a curve to the left and this curve comes right up to the cattle guard, and you cannot see anything until you get on a straight track with the engine, and I think this cattle guard is very little over three telephone poles from the depot."

The defendant argues that as this evidence shows that the animal came upon the track at a distance of one hundred or one hundred and twenty-five feet from the locomotive, or such close proximity to the locomotive, and that the engineer was unable to stop the train before it struck the animal, that the presumption of negligence on the part of the defendant in such cases was rebutted and consequently the judgment should have been in favor of the defendant.

However, we think that the evidence shows the animal to have been grazing on the dump on which the track was laid, within a few feet of the rails, for some time before the engineer noted the situation, and that this situation was apparently dangerous is indicated by the testimony of Johnson, and of the engineer, who states that he applied the brakes and tried to stop the train, which was at a time when the animal was at a distance of about two hundred and fifty feet from the animal.

The evidence also shows that the engineer could not have seen the position of the animal while the locomotive was on the curve, and that the fireman, had he been on watch, would have had a view of the situation, while the engineer's view was obstructed.

The law requires trainmen to maintain a lookout (Mongogna vs. Ill. Cent. R. R. Co., 115 La. 597, 39 South. 699), and we are of the opinion that the presumption of negligence is not overcome by proof that the engineer alone was maintaining a lookout at a point where, because of a curve, the situation could be seen by the fireman but not by the engineer.

The plaintiff, who arrived at the scene of the accident very soon after the animal had been struck ascertained, by counting the rails from the south point of the curve to the place where the animal was lying (which is indicated by the testimony of the engineer to have been at the approximate point where it was struck), and from this point to the depot, that the respective distances were three hundred and ninety and three hundred and sixty feet, which, considered in connection with the testimony of the engineer, as to the distance in which he could stop the train, and the absence of the fireman, indicates that the train was being rather driven into the station at a rate of speed where the skill of the enginer and the equipment of the train would have been taxed to avoid colliding with any object which may have been on the track between the curve and the depot.

It is true that the fireman has other duties to perform than that of maintaining a lookout, but we are of the opinion that from the situation presented by the evidence in this case, his duty of maintaining a lookout was paramount, and that the collision was directly attributable to his neglect.

The judgment is affirmed.