### No. 2341
### Second Circuit

---

### HOLLINGSWORTH v. HOUSTON, EAST & WEST TEXAS RY. CO.

(November 10, 1927. Opinion and Decree.)

---

(*Syllabus by the Editor*)

1. Louisiana Digest—Railroads—Par. 88.
Under Act No. 70 of 1886, after the owner of live stock has proved that it was killed by the railroad, he has proved sufficient to recover, thereafter the burden of proof is on the railroad to prove that those in charge of its train were not negligent, in order for it to escape liability.

2. Louisiana Digest—Railroads—Par. 84, 86.
Those in charge of a railroad train must see all that they could see. Therefore, where an animal was killed on a private grade crossing, in broad daylight, in an open field, where the track was straight, even though a cattle guard may have partially obstructed the engineer's view, the engineer was clearly negligent and the railroad liable.

Appeal from the Eleventh Judicial District Court of Louisiana, Parish of DeSoto. Hon. John H. Boone, Judge.

Action by Lizzie Hollingsworth against Houston, East & West Texas Railway Company.

There was judgment for plaintiff and defendant appealed.

Judgment affirmed.

Craig, Bolin & Magee, of Mansfield, attorneys for plaintiff, appellee.

Parsons & Colvin, of Mansfield, attorneys for defendant, appellant.

ODOM, J. In July, 1922, one of defendant's freight trains ran over and killed a bull belonging to plaintiff. Alleging that the animal was killed through the gross fault and negligence of defendant's employee and that the animal was worth $150.00, she prosecutes this suit to recover that amount.

Defendant disclaims liability on the ground that the killing was unavoidable, for the reason that the bull suddenly walked upon the track so close in front of the train that it could not be stopped with all diligence in time to avert the collision.

Defendant prosecuted this appeal from a judgment against it for the full amount sued for and costs.

## OPINION

Only two persons saw the animal killed: Mr. Arkridge, the engineer, and Mr. Rogers, the fireman, who were operating the train. The animal was killed in the day time at a grade crossing on a straight track. The road runs through the Hollingsworth pasture, and to enable stock to cross from one side to the other of the track there is a private crossing. The right of way back in the direction from which the train was coming is fenced with barbed wire up to the crossing. In order to keep stock from going on the right of way around the ends of the right of way fence the defendant erected what is referred to as a cattle-guard, which is constructed of four or five boards or slats six inches wide and about six inches apart, the fence or guard being about five feet high. It is built at right angles to the track and extends from the edge of the track about eight or ten feet back. Under the track and between the rails there is a pit spanned by timbers laid eight inches apart running parallel with the crossties so that stock cannot walk down the track.

Mr. Arkridge, the engineer, testified that the track there is straight; that they were running down grade; that he had shut off steam, and that the train, consisting of eighteen or twenty box cars, was coasting at about eighteen or twenty miles an hour; that he was sitting in the box or cab on the right-hand side looking forward down the track; that the animal approached the track from the fireman's or opposite side from him and that he did not see it approach; "he appeared right on the track" about forty or fifty feet ahead of the engine; that he applied the emergency brakes but could not stop the train in that distance; that he knew he could not stop in time to avoid killing the animal but thought possibly he could avoid a derailment of the engine. He says he did not see the animal approaching the crossing, but that it "appeared all of a sudden". And asked:

"From where?"

He said:

"I could not say. He must have been standing behind the cattle guard, is all I could figure.

* * * *

"If the bull had been in the open, away from this cattle guard, I would have seen it."

Mr. Rogers, the fireman, was sitting in his place on the left-hand side, the side from which the animal approached. Asked to state the details, he said:

"We were drifting down hill about eighteen or twenty miles per hour and were approaching this road crossing and the cattle guard was there, and just as we got up to the cattle guard this bull walked on the track. I notified Arkridge to shut down the emergency brake."

He thinks that he and the engineer saw the animal about the same time. Asked if there was anything to prevent his seeing the animal sooner, he said:

"Only the cattle guard would hide it."

Asked if there was any way to avoid killing the animal, he said:

"No, sir, he was in the middle of the track."

Under Act No. 70 of 1886, page 109, it is sufficient in order for the plaintiff and owner to recover, to prove the killing or injury of stock:

"* * * unless it be shown by defendant company that the killing or injury was

not the result of fault or negligence on its part or the negligent or indifferent running or management of the locomotive or train."

Sanders vs. Ill. Cen. R. R. Co., 127 La. 917, 54 South. 147.

Mongogna vs. Ill. Cen. R. R. Co., 115 La. 597, 39 South. 699.

The killing of the animal in this case is admitted, and therefore the burden was on defendant to prove that those in charge of its train were not negligent, and it rested its case upon the testimony of its engineer and fireman. They say they did not see the animal until the engine was within forty or fifty feet of it, that it was then on the track and it was too late to stop the train and avoid the killing.

If an animal suddenly goes upon a railroad track in front of a moving train, so close ahead that the train cannot be stopped before hitting it, and it is killed, the company is not liable for the damage, provided those in charge of the train were not negligent in failing to see the animal approaching the track or in such close and dangerous proximity thereto as to make it reasonably certain it was in danger.

The burden in such cases is upon the defendant to show not only that the animal suddenly emerged upon the track and was not seen in time to avoid the accident, but also that the animal could not have been seen sooner by the exercise of due diligence.

It is the duty of those in charge of railroad trains to keep constantly looking ahead for stock which may be on the track or in close or dangerous proximity thereto. The liability of a railroad company in cases of this kind is not based upon what those in charge of the train do see but upon what they could have seen with due diligence. One is responsible for not only what he actually knows but also for what he is bound to know.

Mongogna vs. Ill. Cent. R. R. Co., supra.

The rule is that those in charge of trains must see what they could see.

The animal in this case was killed on a private grade crossing, in broad daylight, in an open field, where the track was straight. We can imagine no reason why those in charge of the train could not have seen the animal in time to avoid killing it. Granting that the animal was not on the track for any appreciable length of time, it could have been seen while approaching the track and in dangerous proximity thereto. The engineer says that if the bull had been in the open, away from the cattle guard, he would have seen it. But the cattle guard is not such an obstruction as would hide the bull from view. It is a fence only about five feet high and extends only eight or ten feet back from the edge of the track. It is built of four or five slats six inches wide and six inches apart.

The bull was four years old, and large, and red in color, and should, we think, have been seen through the fence, or it could have been seen while approaching the track before it got behind the fence if the fireman and engineer had been looking ahead. If the bull had been standing still behind the fence and had suddenly began to walk to the track as the train approached, it could have been seen through the fence. Not only that, as the fence was only five feet high and as the engineer and fireman were sitting up in the cab or box, considerably above the level of the track, they could have seen it over the fence if they had been looking. The animal approached the track from the fireman's side and he could and would no doubt have seen it if he had been looking ahead as he should have been doing. He says when he first saw the animal "he was right in the middle of the track, crossing the track".

Asked if there was anything to keep him from seeing the bull sooner, he said:

"Only the cattle guard would hide it."

But, as we have noted above, the cattle guard would not hide it. He does not say he was looking ahead previous to the moment he saw it. He was asked what he was doing from the time he turned the curve, and he said:

"Just sitting looking out riding down hill."

We think under the testimony defendant is liable.

But we are not convinced that the animal was worth $150.00. J. J. Hollingsworth said he was, but we note that he says that when he went to get one to replace the one killed he inquired at the Fair and could not get one for less than $100.00 or $200.00. Mr. Wyatt, who lives in that vicinity and was engaged in the cattle business, said that cattle were cheap in 1922 and that the bull killed was worth not more than $45.00 or $50.00. The testimony satisfies us that the bull was worth $100.00, but no more.

For the reasons assigned, it is ordered and decreed that the judgment appealed from be amended so as to fix the value of the animal at $100.00, and as thus amended the judgment is affirmed, with costs.